

# THE ATTORNEY GENERAL
# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

April 29, 1952

Hon. Bascom Giles, Commissioner
General Land Office
Austin, Texas    Opinion No. V-1438

Re: Legality of issuing a
patent on the Iredell
Redding Survey under
the submitted facts.

Dear Sir:

Your request for opinion reads in part as follows:

"We desire the opinion of your office regarding the legality of the issuance of patent on the Iredell Redding Survey, being Robertson First Class File 527½, Abstract No.677, situated in Navarro County, Texas.

"A certificate of facts is enclosed which will state the fact situated involved here . . . Due to certain notations appearing on the file jacket and references there made, it appears doubtful that such patent may issue.

"Your opinion is necessary on account of the conflicting views concerning the issuance of patent. Please advise whether patent can legally issue. The question is not the subject of any pending or proposed litigation so far as is known to this office."

The certificate of facts accompanying your request relates:

"That on May 1, 1841, the Travel-
ing Board of Land Commissioners, appoint-
ed by an Act of Congress of the Republic
of Texas, investigated the records of the
different Boards of Land Commissioners
East of the Brazos River, reported that
it investigated the claim of Iredell Red-
ding, by virtue of First Class Headright
Certificate No. 136, issued to the said
Iredell Redding, by the Board of Land Com-
missioners of Houston County, and rejected
same, it appearing to their satisfaction
that such Certificate was not legal and
genuine;

"That on December 16, 1840, Iredell
Reding made verified affidavit that he was
the owner of a claim for one league and one
labor of land, issued by the Board of Land
Commissioners of Houston County in the
name of Iredell Redding, per order of the
District Court of said County, dated March
2, 1838 and numbered 136, and that he had
never sold, alienated or transferred same
in any manner, that he delivered said Cer-
tificate to Richard Sparks, on March 27,
1838 to locate and have surveyed, and that
a short time thereafter, the said Sparks
was killed by the Indians, 'on Trinity as
is supposed, that the said Certificate, as
he believes, was lost at that time and that
since lost he has neither known or heard of
same since that time;'

"That the District Court of Houston
County in the February term of 1838 in a
case styled, Iredell Redding vs. the Land
Commissioners of Houston County, 'ordered
by the Court that the plaintiff be allowed
one league and one labor of land agreeable
to the verdict of the jury;'

"That on June 12, 1843, Iredell Reding
made verified affidavit that he had placed
in the hands of Richard Sparks, his Head-
right Certificate for one league and one
labor of land being No. 136, granted to him
by the Board of Land Commissioners of Houston

County, and other Certificates, and that
he had not alienated or transferred same
in any manner, and that said Certificates
had been lost and since lost, he had
neither heard of same and had advertised for
same in accordance with law, and enclosed a
newspaper clipping to such effect, adver-
tising the loss of said Certificates, and
said affidavit and newspaper clipping, along
with the instruments recited in the two pre-
ceding paragraphs, are now filed in the
General Land Office;

"That on April 25, 1850, William M.
Lane, District Surveyor of Robertson Land
District, surveyed a tract of 17,433,339
square varas of land for Iredell Reding, by
virtue of Duplicate Certificate No.1/100,
issued by the Commissioner of the General
Land Office June 12, 1843 for one league
and one labor of land, and compiled field
notes of same, which were recorded in the
office of the District Surveyor of Robert-
son Land District, and then transmitted to
the Land Office, where they were received
and filed, and said field notes now bear
the following endorsement, on the back
thereof, 'Cancelled by corrected field
notes;'

"That on October 10, 1850, William M.
Lane, Deputy Surveyor of Robertson Land
District, surveyed a tract of 8,198,880
square varas of land in what is now Navarro
County, for Iredell Reding, by virtue of
said Duplicate Headright Certificate No.
1/100, and compiled field notes of same,
which were recorded in the office of the
District Surveyor of Robertson Land District,
and then transmitted to the Land Office, where
they were received and filed and were approved
as correct on February 9, 1852;

"That on June 16, 1849, Iredell Reding
and wife, Nancy, conveyed his Duplicate
Headright Certificate for one league and
one labor of land, as issued by Thomas William
Ward, Commissioner of the General Land Office,

on June 12, 1843, to William M. Love, by instrument which is now filed in the General Land Office;

"That on November 18, 1859, J.M. Eliot, County Surveyor of Navarro County resurveyed the large survey made by virtue of said Duplicate Certificate 1/100, and compiled corrected field notes thereof, showing same to consist of 17,402,619 square varas of land, which corrected field notes were recorded in his office and then transmitted to the Land Office, where they were received and filed December 15, 1859, and said field notes now bear the following penciled endorsement, 'This survey does not agree with the surrounding surveys and appears to conflict with John White ptd.survey, July 22/87. C.W. Pressler;'

"That Section 2 of Chapter 84, of an Act passed February 13, 1854, (4 Gam. 137) states in part, 'That said Commissioner be, and he is hereby authorized and required to issue a patent to Iredell and Nancy Reding, for one league and labor of land, on the location and survey made by virtue of said Iredell's Headright Certificate;'

"That the file wrapper in the Land Office containing the papers pertaining to the said Iredell Redding's Surveys in Navarro County, bears the following endorsement, 'Certificate rejected by the Traveling Board - the Legislature cannot legalize it, though they have passed an Act for that purpose, - see Special Acts of 1854, Page 140. See also Section 2, Art.10, State Constitution;'

"That by an Act approved February 8, 1860 (5 Gam.196) the Legislature of the State of Texas, stated that certain described land lying in Navarro County on the waters of

Richland Creek, comprising one league
and one labor of land, 'is hereby do-
nated to said Wm. M. Love, and all the
rights, title and interest to the State
in and to said land is hereby relinquished
to said Wm. M. Love, and said land is em-
braced in two surveys;'

"That the back of the field notes of
the smaller of the Redding Surveys in Navarro
County bears the following endorsement, 'Re-
ceived Government dues upon the within field
notes amounting to $4.95 specie from W.M.
Love, January 12, 1855. F. W. Moore, Re-
ceiving Clk.,' and the original field notes
covering the larger survey bear the follow-
ing endorsement, 'Received $9.40 specie in
full, of Government, upon the within field
notes from Wm. M. Love, Jany.12, 1855.
Fred W. Moore, Recvg. Clerk;'

"That J.H. Walker, Commissioner of
the General Land Office advised Mr. W. L.
Thomas of Houston, Texas, in a letter dated
November 29, 1929, that subsequent to the
passage of the Act of February 13, 1854,
the General Land Office took the view that
the Legislature could not validate the
Redding Certificate, in view of the provi-
sions of Section 2, Article 11 of the Con-
stitution then in force, and further ad-
vised that the Act of February 8, 1860, re-
linquished said land to Wm. M. Love, noting
that said Act made no provisions for the
patenting of the land and statd that such
Statute seemed to confer title and there
would be no necessity for issuing a patent,
and, in fact, no authority was given this
Department to issue one, stating that it
would appear that the Statute last mentioned
confers title, 'or rather takes title out of
the State;'"

An Act of the 4th Congress of the Republic of Texas, R.S.1840, at page 139, provides in part:

"Sec.1. <u>Be it enacted by the Senate and House of Representatives of the Republic of Texas</u>, in Congress assembled, That there shall be elected by joint vote of both Houses of Congress, three Commissioners, whose duty it shall be to visit each county in the Republic, the county seat of which is east of the Brazos river; and, also, three other Commissioners, whose duty it shall be to visit each county, the county seat of which is west of the Brazos river; and, in conjunction with three County Commissioners, to be elected in like manner by Congress, from the respective counties for which they are to act, to inspect the records of the Boards of Land Commissioners, and ascertain by satisfactory testimony what certificates for land have been issued by the respective boards to legal claimants, and report as soon thereafter as practicable to the Commissioner of the General Land Office, such certificates as they find to be genuine and legal setting forth in their reports the number and date of the certificates, the quantity of land, and the name of the person to whom issued; in which report, at least two of the General Commissioners and two of the County Commissioners must concur.

"Sec.4. <u>Be it further enacted</u>, That it shall be the duty of the Commissioner of the General Land Office, upon the return of a survey made in accordance with law, and by authority of any certificate that shall be returned as genuine and legal by the Commissioners appointed by this act, and as required by this Act, to make out and deliver to the rightful owner a patent for the same, unless it shall appear from the records of his office, or from information, on oath, given him, that there is some illegality in the claim; in such case he shall refer the matter to the

Attorney General, whose decision in writing shall be sufficient authority for him to issue or withhold the patent as the case may be.

"Sec.5. Be it further enacted, That the Commissioner of the General Land Office is hereby prohibited from issuing a patent upon any survey that shall not have been or may hereafter be made by authority of a certificate returned as genuine and legal by the Commissioners appointed by this Act, or by authority of a warrant issued for military services, after the same shall have been presented to, and approved by the Secretary of War, or by authority of a certificate issued by special act of Congress; and any patent issued contrary to the provisions of this act, shall be null and void, and the Commissioner of the General Land Office issuing a patent contrary to the provisions of this act, shall be deemed guilty of a high misdemeanor, and on conviction thereof before the District Court, shall be fined in a sum of not less than five thousand dollars, unless the person claiming such patent shall produce to the Commissioner of the General Land Office, the judgment or decree of a District Court of this Republic, from which no appeal was taken within the time prescribed by law, that he is justly entitled to the amount of land under the Constitution and laws of this Republic."

The Commissioners elected under the above statute examined the certificate of Iredell Redding and disapproved it.

The General Land Office issued a duplicate certificate, No.1/100, to Iredell Redding for the lost certificate Number 136. The duplicate certificate, issued in 1843, could confer no rights other than those given by the original certificate. Texas Land and Mortg.Co. v. State,23 S.W. 258 (Tex.Civ.App.1892, error ref.).

If Redding acquired no right by the issuance of the duplicate certificate, his conveyance of this certificate to William M. Love would vest no right in

Love. Nor would the surveys made for Love under the duplicate certificate and his payments of dues create any right in him.

Section 2 of Article XI of the Constitution of Texas (1845) provided:

"Sec.2. The District Courts shall be opened until the first day of July, one thousand eight hundred and forty-seven, for the establishment of certificates for head-rights, not recommended by the Commissioners appointed under the act to detect fraudulent land certificates, and to provide for issuing patents to legal claimants; and the parties suing shall produce the like proof, and be subjected to the requisitions which were necessary, and were prescribed by law to sustain the original application for the said certificates, and all certificates above referred to, not established or sued upon before the period limited, shall be barred, and the said certificates, and all locations and surveys thereon, shall be forever null and void -- and all relocations made on such surveys, shall not be disturbed until the certificates are established as above directed."

Neither Redding nor Love having gone into court prior to July 1, 1847, to establish the validity of the headright certificate, their claim was cut off by the terms of the Constitution, and no patent could be issued under the headright certificate.

Section 2 of an Act of the 5th Legislature, 1854, chapter 84, page 137, provided in part:

"That said Commissioner be, and he is hereby authorized and required to issue a patent to Iredell and Nancy Reding, for one league and labor of land, on a location and survey made by virtue of said Iredell's headright certificate."

In view of the above provision of the Constitution of 1845, we are of the opinion that this Act of 1854 was unconstitutional.

Chapter 133, Acts of the 8th Legislature, 1859, page 156, provides in part:

"An Act relinquishing the right of the State to certain lands therein named to William M. Love of Navarro County, Texas.

"Section 1. Be it enacted by the Legislature of the State of Texas, That the following described land lying in Navarro County, Texas, on the waters of Richland creek, comprising one league and labor of land is hereby donated to said Wm. M. Love and all the rights, title, and interest of the State in and to said land is hereby relinquished to said Wm.M. Love, said land is embraced in two surveys, the first of which is bounded and described as follows: . . .

". . . And the State of Texas hereby relinquishes all her right and title in and to the above described land to the said William M. Love, of Navarro County, Texas."

This grant by the Legislature, if valid, would be sufficient in itself to pass full title out of the State to the subject land and vest it in William M. Love, and the issuance of a patent thereon would be unnecessary and without effect. On the other hand, if the legislative grant were invalid, then no title passed to William M. Love by virtue thereof, and the issuance of a patent on these lands would be unauthorized. It is our opinion, therefore, that the Commissioner of the General Land Office is not authorized to issue a patent on the above land.

SUMMARY

The Commissioner of the General Land Office has no authority to issue

a patent on land which was the sub-
ject of an express grant by the Legis-
lature in 1859, regardless of the
validity or invalidity of the legis-
lative grant.

APPROVED:                         Yours very truly

Jesse P. Luton, Jr.          PRICE DANIEL
Land Division                Attorney General

E. Jacobson
Reviewing Assistant

                             By
Charles D. Mathews               Robert H. Hughes
First Assistant                        Assistant

RHH:bt